UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>523 IP LLC,<br>    an Illinois corporation,<br><br>                         Plaintiff,<br>v.<br><br>CureMD.Com, Inc.<br>    a New York corporation,<br><br>                         Defendant.</td><td>Case No. 11 Civ. 9697 (KPF)<br><br>**DEFENDANT CUREMD'S<br>RESPONSE TO PLAINTIFF 523IP'S<br>STATEMENT OF UNDISPUTED<br>MATERIAL FACTS AND<br>STATEMENT OF ADDITIONAL<br>UNDISPUTED MATERIAL FACTS<br>PURSUANT TO<br>LOCAL CIVIL RULE 56.1(a)**</td></tr>
</table>

AND NOW, comes Defendant, CureMD.Com, Inc. (hereinafter "CureMD"), and files the following RESPONSE TO PLAINTIFF 523 IP LLC'S (hereinafter "523 IP" STATEMENT OF UNDISPUTED MATERIAL FACTS, and in support thereof avers the following:

I.   **THE INVENTION AND THE PARTIES**

1.     Joseph Sameh filed U.S. Patent Application No. 10/115,393, entitled "Website Messaging System" on April 3, 2002.

**Citation:** Ex. '1' (Patent), Ex. '2' ¶ 28 (Sameh Report).

**CUREMD'S RESPONSE:**  Undisputed.

2.     Prosecution of the application took eight years and culminated in a unanimous ruling in favor of the invention by the Board of Patent Appeals and Interferences.

**Citation:** Ex. '2' ¶ 28 (Sameh Report).

**CUREMD'S RESPONSE:**  Undisputed but disputed that this fact is material to 523 IP's motion.

**3.** On April 20, 2010, the United States Patent and Trademark Office issued U.S. Patent No. 7,702,523 ("'523 Patent") to Joseph Sameh.

**Citation**: Ex. '1' (U.S. Patent No. 7,702,523).

**CUREMD'S RESPONSE:** Undisputed.

**4.** Patent Term Adjustment time (PTA) is awarded to compensate an inventor for excessive delays by the United States Patent and Trademark Office. The average award in 2010 was 600 days.

**Citation**: Ex.'2' ¶¶ 29, 30 (Sameh Report).

**CUREMD'S RESPONSE:** Undisputed that the Patent Term Adjustment time (PTA) is awarded to compensate an inventor for excessive delays by the United States Patent and Trademark Office but disputed that this fact is material to 523 IP's motion.

**5.** The '523 Patent received a PTA of 2,444 days.

**Citation**: Ex.'2' ¶¶ 29, 30 (Sameh Report).

**CUREMD'S RESPONSE:** Undisputed but disputed that this fact is material to 523 IP's motion.

6.      On February 11, 2011, Joseph Sameh assigned all his rights in the '523 Patent to 523 IP LLC ("523 IP").

**Citation**: Ex. '2' ¶ 32 (Sameh Report).

**CUREMD'S RESPONSE:**  Disputed to the extent that 523 IP's evidence for this statement is conclusory, deficient, and fails to prove the statement for lack of evidence of an assignment of the '523 patent from Joseph Sameh to 523 IP.

7.      Mr. Sameh is the managing partner of 523 IP.

**Citation**: Ex. '2' ¶ 32 (Sameh Report).

**CUREMD'S RESPONSE:**  Undisputed.

8.      Joseph Sameh founded NeedMyDoctor Company, which practices the '523 Patent.

**Citation:** Ex '2' ¶ 27 (Sameh Report).

**CUREMD'S RESPONSE:**  Undisputed that Joseph Sameh founded Need My Doctor Company. The evidence cited by 523 IP does not establish that Need My Doctor Company practices the '523 patent.

9.      Kamal Hashmat was CEO of CureMD.com ("CureMD"), a New York Corporation.

**Citation:** Ex. '3' at 8:9-14 ((Dep. Tr. of Kamal Hashmat) (28 March 2013)).

**CUREMD'S RESPONSE:** Undisputed

     **10.**     CureMD began marketing the Patient Portal in 2007.

**Citation**: Ex. '3' at 58: 21-25 ((Dep Tr. of Kamal Hashmat) (28 March 2013)).

**CUREMD'S RESPONSE:** Disputed. The purported fact is misleading and confusing. 523 IP's citation does not support the purported fact. CureMD first made Patient Portal available to its customers in the 2000/2001 timeframe. (Ex. M., K. Hashmat Dep. 44: 6-9).

     **11.**     The Patient Portal is a "bulletin board that doctors can give patients access to where they can – it's a sticky pad that they can go in and write a message, write a sticky note for the doctor."

**Citation**: Ex. '3' at 59:10-20 (Patient Portal Press Release), 23: 16-12 (bulletin board) ((Dep Tr. of Kamal Hashmat) (28 March 2013)).

**CUREMD'S RESPONSE:** Disputed. 523 IP's citation does not support the purported fact. The purported fact is misleading and incomplete to the extent of the functionality of a sticky note to write a message to a doctor and placed in the doctor's in box where there is no electronic notification that the doctor has received a message unlike an email messaging system. (Ex. O., K. Hashmat Dep. 63:2-21).

12.     The Patient Portal was sold initially as an "add-on" service to the CureMD All-In-One suite of products.  Beginning in 2013, the Patient Portal was included as part of the "core suite."

**Citation**: Ex. '3' at 31:1-25, 32:1-13 ("add-on" service), 32:7-9 ("core suite") ((Dep Tr. of Kamal Hashmat) (28 March 2013)).

**CUREMD'S RESPONSE:**  Disputed.  523 IP's citation does not support the purported fact.  The purported fact is misleading and incomplete to the extent that Patient Portal was sold as part of the All-in-One suite of products in 2000/2001 (Ex. L., K. Hashmat Dep. 10:14-25, 11:1-22; Ex. M. Hashmat Dep. 23:14-21, 44:6-9).

## II.   PROCEDURAL HISTORY

13.     523 IP's expert witness, Joseph Sameh, was designated an expert prior to the February 15, 2013 deadline.  CureMD did not designate any experts prior to the deadline.

**Citation**: Ex. '5' at 7 (Status Hearing May 17, 2013).

**CUREMD'S RESPONSE:**   Undisputed but disputed to the extent that this statement is intended to suggest that CureMD "missed" the deadline to designate any experts prior to the deadline.  As set forth by CureMD in its opposition to 523IP's motion for partial summary judgment, CureMD does not need an expert to prove non-infringement (CureMD's opposition to 523 IP's motion, pp. 21-23).

14.     At the May 17, 2013 Status Hearing, Judge Pauley ruled it was too late for CureMD to designate any experts in this matter.

**Citation:** Ex. '5' at 7 (Status Hearing May 17, 2013).

**CUREMD'S RESPONSE:**  Undisputed.

## III.     JURISDICTION AND VENUE

15.     This court has subject matter jurisdiction over this matter under at least 28 U.S.C. §§ 1331 and 1338(a).

**Citation**: Ex. '4' ¶ 5 (Ans.).

**CUREMD'S RESPONSE:**  Undisputed.

16.     This court has personal jurisdiction over CureMD because it transacts business within this district and elsewhere within the state of New York.

**Citation**: Ex. '4' ¶ 6 (Ans.).

**CUREMD'S RESPONSE:**  Undisputed.

17.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1931 and 1400(b).

**Citation**: Ex. '4' ¶ 7 (Ans.).

**CUREMD'S RESPONSE:**  Undisputed.

IV.     **PROVING INFRINGEMENT**

**18.**     Mr. Sameh published more than twenty five technical and industry opinion articles, and authored two textbook sections.

**Citation**: Ex.'2' ¶ 3 (Sameh Report).

**CUREMD'S RESPONSE:**  Undisputed but disputed that this fact is material to 523 IP's motion.

**19.**     Mr. Sameh reviewed the source code produced by CureMD during discovery.  Mr. Sameh also reviewed the CureMD Billing User Guide, Clinical User Guide, Front Desk User Guide, Services User Guide and the Patient Portal User Guide.

**Citation**: Ex.'2' ¶¶ 64, 67 (Sameh Report).

**CUREMD'S RESPONSE:**  Undisputed that Mr. Sameh reviewed the source code produced by CureMD during discovery.  Disputes the purported fact to the extent that the cited Billing User Guide, Clinical User Guide, Front Desk User Guide, and Service User Guide are not material to 523 IP's motion.  523 IP has not alleged that these user guides infringe claim 31 (Doc. No. 12).

**20.**     Mr. Sameh's examination found CureMD's Patient Portal product infringes the '523 Patent.

**Citation**: Ex. '2' ¶ 90 (Sameh Report).

**CUREMD'S RESPONSE:**  Disputed.  523 IP's citation is conclusionary and does not support the purported fact that CureMD;s Patient Portal product infringes the '523 patent.  Mr. Sameh stated that it was his opinion that CureMD infringes the '523 patent.  As the inventor of the '523 patent, his opinion that the Patient Portal infringes the '523 patent carries no weight and no deference should be given to his opinion as a matter of law.


**21.**    The Patient Portal is a tool for "Online Doctor Patient Collaboration."
**Citation**: Ex. '2' at Claim Chart p. 1 (Sameh Report).


**CUREMD'S RESPONSE:**  Disputed.  The cited evidence does not support the statement.  The phrase "Online Doctor Patient Collaboration" is a marketing term used only in the context of introducing a new product. (Ex. II, K. Hashmat Dep. 59:2-24).


**22.**    The Patient Portal allows a patient to send a message to a doctor.
**Citation**: Ex. '6' at 156:12-17 ((Dep Tr. Of Kamal Hashmat)(11 Sept. 2013)).


**CUREMD'S RESPONSE:**  Disputed to the extent that cited evidence does not support the statement which is misleading and incomplete.  The citation to Kamal Hashmat deposition testimony is not his complete testimony which established that there are no routing services with the CureMD system and it provides a preselected drop-down list of the doctors. (Ex. AA. K. Hashmat Dep. 156:10-25; 157:2-9).

**23.**     When a patient presses "to" or "cc" on the Patient Portal message form, several destination options, including doctors, appear.

**Citation**: Ex. '2' ¶ 68 (Sameh Report).

**CUREMD'S RESPONSE:**  Disputed to the extent that this statement is intended to suggest that destination options include doctors in the context of claim 31.  In the context of the construction of claim 31 destinations are communication devices, such as a cell phone telephone, pager, PDA, etc. and not a doctor.  (Ex. A., '523 patent col. 8, lns. 24-60).

**24.**     CureMD uses Microsoft ASP.NET programing framework, which is a web development tool that helps programs run on the internet.

**Citation**: Ex. '2' ¶ 69 & Claim Chart p. 1 (Sameh Report).

**CUREMD'S RESPONSE:**  Undisputed.

**25.**     When a patient selects the "compose" link in the Patient Portal, a form is downloaded and displayed on the screen.

**Citation**: Ex. '2' ¶ 72 (Sameh Report).

**CUREMD'S RESPONSE:**  Disputed.  The cited evidence does not support the statement there is no form downloaded from the web site for composing a message.  It is merely a web page for composing messages which are stored in the database.  (Hashmat Decl. ¶18).

9

26.     The source code of the patient portal creates this standard message form.

**Citation**: Ex. '2' ¶ 72 (Sameh Report).

**CUREMD'S RESPONSE:**  Disputed to the extent that this purported fact infers that the source code of the Patient Portal creates a message form downloaded from a web site.  The source code does not create a form downloaded from a website.  (Hashmat Dec. ¶18).

27.     When a patient hits "send a message," a list of practice staff along with their role in the practice, appears.

**Citation**: Ex. '2' ¶ 73 (Sameh Report).

**CUREMD'S RESPONSE:**   Undisputed.

28.     The Patient Portal User Guide states an administrator can "configure the access rights to specify what information users can see on the Patient Portal."

**Citation**: Ex. '7' at 18 (Patient Portal User Guide).

**CUREMD'S RESPONSE:**  Disputed.   523 IP's citation does not support this purported fact because Exhibit 7 are pages selected from the Billing User Guide and not the Patient Portal User Guide.

29.     When asked if anyone can see personal notes to doctors, Mr. Hashmat pointed out "[i]t depends on the rights that this person has."

**Citation**: Ex '3' at 65:22-23 ((Dep Tr. Of Kamal Hashmat)(28 March 2013)).


**CUREMD'S RESPONSE:**   Disputed to the extent that the citation to this purported fact is not the complete testimony provided by Kamal Hashmat on the issue of notes to doctors.  His complete testimony on the subject establishes that the right of access to information is based on HIPAA rules to protect a patient's health information.  (EX. EE, K. Hashmat Dep. 65:22-25, 66:2-10).


30.     The CureMD software permits an administrator (under the supervision of a physician) to establish roles and privileges for the practice staff.

**Citation**: Ex. '2' at Claim Chart p. 3 (Sameh Report).


**CUREMD'S RESPONSE:**  Disputed.  523 IP's citation does not support the purported fact that a physician supervises an administrator's assignment of roles and privileges for the practice staff. The purported fact infers that the CureMD software permits an administrator to establish roles and privileges for the practice staff.  The roles and privileges are pre-specified as required by HIPAA and under the HITECH laws.  (B. Hashmat Dec. in Oppos. to 523 IP's Motion, ¶29).


31.     The CureMD Billing User Guide and the Clinical User Guide state "the modules you see depend on the access that has been granted to you by the Administrator."

**Citation**: Ex. '2' at Claim Chart p. 3 (Sameh Report); Ex. '8' at 4 (Billing User Guide); Ex. '9' at 4 (Clinical User Guide).

11

**CUREMD'S RESPONSE:** Undisputed.


32.    The CureMD Patient Portal User Guide and CureMD Front Desk User Guide both state that "the modules you see depend on your access level."

**Citation**: Ex. '7' at 4 (Patient Portal User Guide); Ex. '10' at 4 (Front Desk User Guide).

**CUREMD'S RESPONSE:**  Undisputed but disputed that this purported fact is not material to 523 IP's motion because the CureMD Front Desk User Guide is not alleged to infringe claim 31 (Doc. No. 10).


33.    Criteria are provided to allow people with appropriate rights to see specific messages.

**Citation**: Ex. '2' ¶ 74 (Sameh Report).


**CUREMD'S RESPONSE:**  Disputed.  523 IP's citation does not support the purported fact. Rights to see specific messages is not based on criteria (Ex. CC., K. Hashmat Dep. 171:6-25, 172:2-12, 173: 3-24).


34.    The routing and delivery of the messages occur through the modules that each employee can access.

**Citation:** Ex. '2' ¶ 74 (Sameh Report).


**CUREMD'S RESPONSE:**  Disputed.  523 IP's citation does not support this purported fact.

There is no routing.  Messages of a patient are sent to a data base for retrieval by the recipient and not through modules.  (Ex. AA., K. Hashmat Dep. 156: 17-25, 157:2-4).

35.      Patients can send messages to their physicians via the Patient Portal.

**Citation**: Ex. '2' at Claim Chart p. 4 (Sameh Report).

**CUREMD'S RESPONSE:**  Disputed.  523 IP's citation does not support this purported fact. See Response to Statement 34 above.

36.      The Patient Portal source code creates the "compose" form that is downloaded by the patient from the CureMD website.

**Citation**: Ex. '2' at Claim Chart p. 4 (Sameh Report).

**CUREMD'S RESPONSE:**  Disputed.  523 IP's citation does not support this purported fact.  A "compose" form is not downloaded by the patient from the CureMD web site.  A message is composed on a drop-down form that is not downloaded.  (K. Hashma Dep. Ex. V., 162:3-9, Ex. FF., 170:2-25, 171:2-25, 172:2-25, 173:2-5.

37.      The forms in the CureMD All-In-One system are returned to the website as a message to the physician.

**Citation**: Ex. '2' ¶ 80 (Sameh Report).

**CUREMD'S RESPONSE:**  Disputed.  523 IP's citation does not support this purported fact.

The completed form is not sent to the physician.  It is sent to a data base for retrieval by the recipient.  (See Response to Statement 36 above, B. Hashmat Dec. Oppos. to 523 IP's Motion ¶39).

**38.**     A patient enters data onto the form and clicks "send" on the form page which activates a function of the Patient Portal code.  This function verifies the message recipients, uploads attachments, and places the data into the object called "objPatUsermsg" and then adds the message contents into the message database.

**Citation**: Ex. '2' at Claim Chart p. 5 (Sameh Report).

**CUREMD'S RESPONSE:**  Disputed.  523 IP's citation does not support this purported fact. (See Responses to Statements 37 and 38 above).

**39.**     Messages, such as the management and processing of appointment request, information update requests, and registration requests, are uploaded to the website.

**Citation**: Ex. '2' ¶ 81 (Sameh Report); Ex '7' at 28 (Patient Portal User Guide).

**CUREMD'S RESPONSE:**  Disputed.  523 IP's citation does not support this purported fact. Messages are not uploaded to the web site because a form is not downloaded from the web site. (See Response to Statement 36).

**40.**     In the Patient Portal, information content of the message received is determined from the form requested by the patient.

**Citation**: Ex. '2' at Claim Chart p. 6 (Sameh Report).

**CUREMD'S RESPONSE:**   Disputed.  523 IP's citation does not support this purported fact. The content of the message received is not determined from the form.  The patient determines the information content.  (Hashmat Decl. ¶¶ 17, 24-28: Ex. GG., Hashmat Dep. 163: 23-25, 164: 2-24, 165: 2-22).

41.     When the patient chooses the type of message they would like to send, the system downloads that form specific to the requestor/patient.

**Citation**: Ex. '2' at Claim Chart p. 6 (Sameh Report).

**CUREMD'S RESPONSE:**   Disputed. 523 IP's citation does not support this purported fact. (See Response to Statement 40 above).

42.     When a patient sends a registration request, the provider staff may accept or reject that request.

**Citation**: Ex. '7' at 27 (Patient Portal User Guide).

**CUREMD'S RESPONSE:**   Undisputed.

43.     Access to each type of message is controlled by the relevant module within the CureMD software, the settings of which are administered by the physician.

**Citation**: Ex. '2' at Claim Chart p. 6 (Sameh Report).

**CUREMD'S RESPONSE:**   Disputed.  523 IP's citation does not support the purported fact every module or component of the Patient Portal, such as an office manager, would have different access compared to a physician. Access to messages may be restricted by an

administrator to ensure the privacy and security of patients' confidential information, in accordance with HIPAA guidelines.

44.     CureMD's Billing User Guide, CureMD Clinical User Guide, CureMD Front Desk User Guide, and CureMD Patient Portal User Guide all show that messages can be processed only within their relevant software module.

**Citation**: Ex. '2' ¶ 83 (Sameh Report).

**CUREMD'S RESPONSE:**  Disputed to the extent that this purported fact infers that the patient sends messages to all the users.  The patient only accesses Patient Portal to select and send a message to a recipient.  The patient does not use the other modules. (B. Hashmat Decl., Oppos. to 523 IP's motion ¶¶15, 16; Ex. DD).

45.     Privileges are built into the CureMD software, and allow staff members to have access to different modules and different messages.

**Citation**: Ex. '2' at Claim Chart p. 8, 9 (Sameh Report).

**CUREMD'S RESPONSE:**  Disputed because the purported fact is an inaccurate characterization of how the pre-specified roles and privileges are assigned to staff members. Staff members are assigned roles and duties to meet the privacy and security requirements under HIPAA and HITECH laws.  (Ex. EE., K. Hashmat Dep. 65:22-25, 66:2-10, See Response to Statement 44 above.)

46.     Messages are only processed within the software module to which they are relevant.

**Citation**: Ex. '2' ¶ 83 (Sameh Report).

**CUREMD'S RESPONSE:**   Disputed to the extent that the purported fact is potentially misleading and incomplete.  The processing of messages from patient to physician is only relevant to Patient Portal in the context of 523 IP's motion. (Ex. BB., Hashmat Dep. 65: 4-16).

47.     The CureMD software determines the message content by the form requested and returned, and recognizes and matches each particular form to the corresponding software module among the plurality of available modules.

**Citation**: Ex. '2' ¶ 83 (Sameh Report).

**CUREMD'S RESPONSE:** Disputed.  523 IP's citation does not support the purported fact.  (See Response to Statement 43 above.)

48.     The CureMD system directs each message to the appropriate staff members only and not to other staff members.

**Citation**: Ex. '2' ¶ 84 (Sameh Report).

**CUREMD'S RESPONSE:** Disputed.  523 IP's citation does not support the purported fact.  Each message is sent to the data base for retrieval by the recipient.  (Ex. AA., Hashmat Dep. 156: 17-25, 157: 2-4: B. Hashmat Decl. ¶¶ 17, 37).

**49.** A complete list of the roles included in the CureMD software is shown in the following table:

| **RolePersonalRights** | **GetUserPatientRights** | **GetSetUserClinicalRights** |
|---|---|---|
| Result | RPatient | Clinical Overview |
| Eligibility | RFinancials | History |
| ReviewSOAP | RRefferals | Diagnoses |
| PatientResponse | RProviderNote | Case Review |
| Reminders | RScheduling | Memos |
| Schedules | RDemographics | Complaints |
| Immunizations | RAddPatient | Vitals |
| eRx | RSignOffNote | Orders and Results |
| Electronic Results | RConfidential | Flow Sheet |
| BillingAlerts | RunSignNote | Dates |
| Today Patients | DeleteProviderNote | Allergies |
| | Merge Patient | ROS |
| **KPIsRoleRights** | RunSignOrder | Immunization |
| AccountsReceivable | BlockPatientScheduling | Tasks |
| ARCollectionPeriod | CustomizeDrugInteractionNotices | School Forms |
| CapacityUtilization | RPrescribe | Medications |
| ChargesPaymentsBenchmark | RMessages | Physical Exam |
| CoPayCollected | | Exposure |
| PatientVisits | | Reminders |
| TopDiseases | | Print Chart Report |
| TopProcedures | | IQMark Reports |
| RevenueCollected | | Overridden Alerts |
| RevenueCollectionRatio | | Custom Forms |
| Denials | | Clinical Alerts |
| Rejection | | Order Sets |
| RVUAnalysis | | Oncology Care |
| MeaningfulUseCmpliance | | |

**Citation**: Ex. '2' at Figure 10 (Sameh Report).

**CUREMD'S RESPONSE:** Undisputed

**50.** Different members of a practice have access to different message types.

**Citation**: Ex. '2' ¶ 86 (Sameh Report).

18

**CUREMD'S RESPONSE:** Disputed. 523 IP's citation does not support the purported fact. The purported fact is an inaccurate characterization of access to a patient's message based on pre-specified roles and privileges for the practice members. (See Response to Statement 45 above).

51.     For instance, a clinical staff member may have access to prescriptions, but not to billing or secretarial functions.

**Citation**: Ex. '2' ¶ 86 (Sameh Report).

**CUREMD'S RESPONSE:** Undisputed but disputed that this fact is material to 523 IP's motion. The access rights are specific to the CureMD user guides based on the roles and privileges assigned to staff members (Ex. DD). With Patient Portal, the patient selects and sends a message to any recipient regardless of assigned roles. (See Response to Statement 45 above.)

**52.**    This is illustrated in the Patient Portal User Guide:



Figure 1: CureMD

Figure 1 shows the information and links that are available in each CureMD module, as described below. The modules that you see depend on your access level.

**Citation**: Ex. '7' at 4 (Patient Portal User Guide).

**CUREMD'S RESPONSE:**  Disputed.  523 IP's citation does not support the purported fact because Exhibit 7 is not a copy of the Patient Portal User Guide.  It is a copy of the Billing User Guide.

**53.**     Additionally, a staff member may see the following image:



The staff member who sees this image has 48 prescription requests that are visible.  This image

is only seen by the authorized staff members and not by every staff member.

**Citation**: Ex. '9' at 56 (Clinical User Guide).


**CUREMD'S RESPONSE:**  Disputed to the extent that 523 IP's purported fact is misleading in

as much as the Clinical User Guide has no relevance to the use of the Patient Portal product for

sending messages from a patient to a staff member (ex. BB) and to 523 IP's motion.


**54.**     A routing processor routes a message to a selected message destination and not to

other destinations based on that message's information content and routing criteria provided by

the physician.

**Citation**: Ex. '2' ¶ 88 (Sameh Report).

**CUREMD'S RESPONSE:**  Disputed to the extent that the purported fact infers that the Patient Portal product includes a routing processor to route a message to a selected destination based on the message's information content and routing criteria.  The Patient Portal product does not include a content processor.  (K. Hashmat Dep., Ex. T., 156: 10-25, 157: 1-9; Ex. U., 161:11-24, 162: 1-9; Ex. W, 162: 22-25, 163:1-13; GG 163: 23-25, 164: 2-24, 165: 2-22). It defies all logic to somehow establish any link between the two. It is pertinent to note that such role based access has nothing to do with 'routing messages' in any way whatsoever. The 523 IP patent specifically provides a criteria provided by the physician for routing messages, whereas the access rights defined by an Administrator (which may not be a physician) restrict or limit usage access of staff members for different modules within the Patient Portal in accordance with their roles, and in order to ensure the privacy and security of patients' information.

## V.     CUREMD'S DEFENSE THEORIES.

**55.**     523 IP asked CureMD to identify and describe its non-infringement defense defense in Interrogatory Nos. 6, 7, and 8.  In its answer, CureMD pointed to documents Bates No. 1005-1010 and 1382-1390 only.

**Citation**: Ex. '11' at 7-9 (Interrog. Ans. Nos. 6, 7, 8), Ex. '12' (Doc. Bates No. 1005-1010 and 1382-1390).

**CUREMD'S RESPONSE:**   Disputed to the extent that 523 IP's purported fact is inaccurate. Doc. Bates Nos. 1005-1010 and 1382-1390 include claim charts and non-infringement contentions comparing the Patient Portal product to claim 31.  Kamal Hashmat provided deposition testimony in support of CureMD's non-infringement defense.  CureMD provided 523 IP with copies of the

Patient Portal software, and Kamal Hashmat provided a demonstration of the software at his deposition on September 11, 2013, which demonstration provided evidence of non-infringement.

**56.**     523 IP asked CureMD to identify and describe its invalidity defense in Interrogatory 9.

**Citation**: Ex. '11' at 10-11 (Interrog. Ans. No. 9).

**CUREMD'S RESPONSE:**  Undisputed.

**57.**     In response, CureMD answered,

> At least asserted claim 31 is anticipated and obvious under 35 U.S.C. §§ 102 and 103, respectively, in light of prior art, patents, publications and other information, either alone or in combination. CureMD also answers that it will produce expert reports and documents from which the answer to this Interrogatory may be derived or ascertained pursuant to Fed.R.Civ.P. 33(d) and the Court's Case Management and Scheduling Order.

**Citation**: Ex. '11' at 10-11 (Interrog. Ans. No. 9); Ex. '12' (Doc. Bates No. 1005-1010 and 1382-1390).

**CUREMD'S RESPONSE:**  Disputed to the extent that 523 IP's purported fact is misleading and incomplete because CureMD served on 523 IP documents Bates Nos. 1558-1993 and copies of five CDs and a DVD, Bates Nos. 15558-1193, evidencing that a product made and sold by Mas Medical Systems, Inc. in 1999 invalidates claim 31.

**58.**     523 IP asked CureMD to provide proof of the defenses of prosecution history estoppel, latches, estoppel, acquiescence, waiver, and unclean hands in response to 523 IP's Interrogatory 12.

**Citation**: Ex. '11' at 13-14 (Interrog. Ans. Nos. 11, 12).

**CUREMD'S RESPONSE:**   Undisputed.

**59.**     In response to Interrogatory 11 and 12, CureMD objected, and pointed to the PTO Office action mailed October 30, 2009, the language in the claims, written description, specifications and figures in the Patent-In-Suit, and incorporated by reference responses to Interrogatory Nos. 2, 3, 4, 6, and 7.

**Citation**: Ex. '11' at 13-14 (Interrog. Ans. Nos. 11, 12).

**CUREMD'S RESPONSE:**   Disputed to the extent that 523 IP's purported fact is misleading because CureMD has identified this prosecution history and '523 patent as relevant to issue of prosecution history estoppel.  CureMD deposed Joseph Sameh on the prosecution history of the '523 Patent.

**60.**     523 IP asked CureMD to provide proof of the "unclean hands" defense in response to 523 IP's Interrogatory 13.

**Citation**: Ex. '11' at 14-13 (Interrog. Ans. No. 13).

24

**CUREMD'S RESPONSE:** Undisputed.


**61.** In response to Interrogatory 13, CureMD objected and incorporated by reference responses to Interrogatory Nos. 2, 3, 4, 6, and 7.

**Citation**: Ex. '11' at 4-8 (Interrog. Ans. Nos. 2, 3, 4, 6, 7).


**CUREMD'S RESPONSE:**   Disputed to the extent that 523 IP's purported fact is misleading because CureMD discovered through documents produced by 23 IP and the deposition testimony of Joseph Sameh (EX. HH, 168:15-24, 164:1-24, 170:1-24, 171:1-24, 172:1-24) that 523 IP knew its patent was invalid in view of the product made and sold by Mars Medical Systems, Inc. in 199.  Knowing that the '523 patent was invalid, 523 IP filed suit against CureMD to enforce the patent.  (Doc. No. 1).


**62.** In response to Interrogatory No. 2, CureMD,

> [O]bjects to Interrogatory 2 on the grounds that it is vague, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving these objections and the General Objections set forth above, CureMD states that the documents identified by Bates Nos. 1092-1095 and 1368-1372 provide information responsive to this Interrogatory.

**Citation**: Ex. '11' at 4 (Interrog. Ans. No. 2).

**CUREMD'S RESPONSE:**  Disputed to the extent that 523 IP's purported fact is

potentially misleading and incomplete as to the extent of CureMD's response to

Interrogatory No. 2.

 

63.     In response to Interrogatory No. 3, CureMD,

> [O]bjects to Interrogatory 3 on the grounds that it is vague, unduly
> burdensome, irrelevant, and not reasonably calculated to lead to the
> discovery of admissible evidence.  Without waiving these objections
> and the General Objections set forth above, CureMD states that the
> documents identified by Bates Nos. 1092-1095 and 1368-1372
> provide information responsive to this Interrogatory.

**Citation**: Ex. '11' at 4 (Interrog. Ans. No. 3).

 

**CUREMD'S RESPONSE:**  Disputed to the extent that 523 IP's purported fact is potentially

misleading and incomplete as to the extent of CureMD's response to Interrogatory No. 3.

 

64.     In response to Interrogatory 4, CureMD

> [O]bjects to Interrogatory No. 4 on the ground that it is vague,
> unduly burdensome, irrelevant and not reasonably calculated to lead
> to the discovery of admissible evidence. Without waiving these
> objections and the General Objections set forth above, CureMD
> incorporates by reference its responses to Interrogatory Nos. 2 and
> 3 above.CureMD further states with regard to a description of the
> product, technology and/or software see documents by Bates Nos.
> 1001-1004, 1012- 1091, and 1359-1365. CureMD further states for
> the identity of the royalty or other payments for sales and/or
> licensing of the product, technology and/or software see documents
> Bases Nos. 1234-1358.

**Citation**: Ex. '11' at 5 (Interrog. Ans. No. 4).

**CUREMD'S RESPONSE:**  Disputed to the extent that 523 IP's purported fact is potentially misleading and incomplete as to the extent of CureMD's response to Interrogatory No. 4.

 

65. In response to Interrogatory 6, CureMD,

> [O]bjects to Interrogatory No. 6 on the ground that it is vague, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. CureMD further objects to this Interrogatory on the grounds that it is premature, that discovery, including claim construction and expert discovery, is ongoing, and that the Court has not yet construed the claims of the asserted patent as a matter of law. CureMD also objects to this Interrogatory on the grounds that the reports, opinion, and conclusions of the parties' expert witnesses have not yet been provided pursuant to the Court's Case Management and Scheduling Order. CureMD further objects to this Interrogatory to the extent that it calls for a legal conclusion and/or seeks attorney work product.  Subject to and without waiving the foregoing general and specific objections, CureMD answers that documents Bates Nos. 1005-1010, and 1382- 1390 set forth the factual basis and explanation for its denial that it is infringing the Patent-in-Suit. CureMD further answers that it has not made, used, sold, offered to sell, or imported and is not making, using, selling, offering to sell, or importing any product that meets each limitation of the claims of the Patent-in-Suit, either literally or under the doctrine of equivalents.

**Citation**: Ex. '11' at 6-7 (Interrog. Ans. No. 6).

 

**CUREMD'S RESPONSE:**  Disputed.  See Response to Statement 55.

27

66.   In response to Interrogatory 7, CureMD,

[O]bjects to Interrogatory No. 7 on the ground that it is vague, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. CureMD further objects to Interrogatory No. 7 on the ground that it is vague, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections and the General Objections set forth above, CureMD states that it has not commissioned an act that constitutes inducement for several reasons, including, but not limited to the following:

(1) CureMD's Patient Portal Product has a substantial non-infringing use;

(2) CureMD had no knowledge of the Patent-in-Suit until it first received correspondence about the Patent-in-Suit from plaintiff dated April 6, 2011; and

(3) When CureMD learned of the existence of the Patent-in-Suit, it notified plaintiff's counsel of the differences between CureMD's Patient Portal Product and the limitations of the claims of the Patent-in-Suit.

**Citation**: Ex. '11' at 7-8 (Interrog. Ans. No. 7).

**CUREMD'S RESPONSE:**  Undisputed.

Dated: April 27, 2014                                       Respectfully submitted,

By: /s/ John M. Adams (admitted pro hac vice)
PRICE & ADAMS, P.C.
P.O. Box 98127
4135  Brownsville Road
Pittsburgh, PA  15227
(412) 882-7170
(412) 884-6650 (Facsimile)
paip.law@verizon.net

John G. Aicher, Jr.
377 Oak Street CS 601
Garden City, NY  11530
(516) 745-6622
(516) 465-0673 (Facsimile)
aicheresq@msn.com
Attorneys for Defendant CureMD.Com, Inc.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify on the 28th day of April, 2014, I electronically filed the foregoing

**DEFENDANT CUREMD'S RESPONSE TO PLAINTIFF 523 IP'S STATEMENT OF**

**UNDISPUTED MATERIAL FACTS AND STATEMENT OF ADDITIONAL**

**UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1(a)** with

the Clerk of Court using the CM/ECF system which sent notification of such filing to the

following attorneys of record:

> Clay J. Pierce
> *clay.pierce@dbr.com*
> 1177 Avenue of the Americas
> 41st Floor
> New York, New York 10036
> (212) 248-3140
>
> Kenneth K. Dort
> Patrick J. Kelleher
> DRINKER BIDDLE & REATH LLP
> 191 N. Wacker Dr. #3700
> Chicago, IL 60606
> 312.569.1000
> *kenneth.dort@dbr.com*
> *patrick.kelleher@dbr.com*

> PRICE & ADAMS

> By: /s/ John M. Adams (admitted pro hac vice)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 523 IP LLC,<br>  an Illinois corporation,<br><br>        Plaintiff,<br><br>v.<br><br>CureMD.Com, Inc.<br>  a New York corporation,<br><br>       Defendant. | **Case No. 11 Civ. 9697 (KPF)**<br><br>**DEFENDANT CUREMD'S<br>RESPONSE TO PLAINTIFF 523IP'S<br>STATEMENT OF UNDISPUTED<br>MATERIAL FACTS AND<br>STATEMENT OF ADDITIONAL<br>UNDISPUTED MATERIAL FACTS<br>PURSUANT TO<br>LOCAL CIVIL RULE 56.1(a)** |

List of Attached Exhibits

| Exhibit No. | Document |
|---|---|
| AA | Declaration of Kamal Hashmat |
| BB | Deposition of Kamal Hashmat |
| CC | Deposition of Kamal Hashmat |
| DD | Patient Portal User Guide |
| EE | Deposition of Kamal Hashmat |
| FF | Deposition of Kamal Hashmat |
| GG | Deposition of Kamal Hashmat |
| HH | Deposition of Joseph Sameh |

# EXHIBIT AA

Page 78

1

2   UNITED STATES DISTRICT COURT

    SOUTHERN DISTRICT OF NEW YORK

3   ------------------------------------------------

4   523 IP LLC, an Illinois corporation,

5                           Plaintiff,

6             -against-

7   CUREMD.COM, a New York corporation,

8                           Defendant.

9   Case No. 11 Civ. 9697 (WHP)

    ------------------------------------------------

10

11                          September 11, 2013

                            9:51 a.m.

12

13

14

15          CONTINUED DEPOSITION of KAMAL

16   HASHMAT, taken by Plaintiff, pursuant to

17   Notice, held at the offices of DRINKER,

18   BIDDLE & REATH LLP, 1177 Avenue of the

19   Americas, New York, New York before Wayne

20   Hock, a Notary Public of the State of New

21   York.

22

23

24

25

1                    K. Hashmat

2    the CureMD patient portal, you know, and I

3    would say I could demonstrate in a very

4    concrete way that CureMD is not infringing

5    and we can show it through the product

6    line, also, there's no infringement from

7    the CureMD patient portal site for the

8    523 IP as it relates to the section

9    thirty-one.

10        Q.    What is your understanding of

11   the infringement issue?

12        A.    One of the understandings that I

13   have is very simple.  Within CureMD we

14   have a sticky note functionality.  When

15   you log into the patient portal, you have

16   an ability to send up a message to the

17   doctor.  There's no routing services that

18   are part of a CureMD system so it doesn't

19   route, so it is a preselected drop-down

20   list of the doctors that -- let's say, for

21   example, you're going to a doctor's

22   medical group and they have ten doctors

23   that are working there and you are allowed

24   to see Dr. Smith.  So when you go to the

25   CureMD patient portal, you can only send a

1                        K. Hashmat

2    message to Dr. Smith regardless of --

3    there's no routing of the message based on

4    the severity of which Mr. Sam is -- that

5    the section thirty-one, so there's no

6    routing that goes through within the

7    CureMD system and I want to demonstrate

8    that by the demo of the CureMD patient

9    portal product later on.

10        Q.    When you say section thirty-one,

11   what do you mean, Mr. Hashmat?

12        A.    Section thirty-one in the --

13            MR. ADAMS: Has the patent been

14        introduced as an exhibit in this

15        deposition, Patrick?

16            MR. KELLEHER: Not in this

17        deposition.

18            MR. ADAMS: I'd like to introduce

19        it into this deposition as the next

20        numbered document, a copy of U.S.

21        patent number 7,702,523.  And that

22        would be the next numbered deposition.

23            (Whereupon, a copy of United

24        States patent number 7,702,523

25        was marked Exhibit 7

Page 185

CERTIFICATION BY REPORTER

1

2

3

4     I, Wayne Hock, a Notary Public of the

5  State of New York, do hereby certify:

6     That the testimony in the within

7  proceeding was held before me at the

8  aforesaid time and place;

9     That said witness was duly sworn

10  before the commencement of the testimony,

11  and that the testimony was taken

12  stenographically by me, then transcribed

13  under my supervision, and that the within

14  transcript is a true record of the

15  testimony of said witness.

16     I further certify that I am not

17  related to any of the parties to this

18  action by blood or marriage, that I am not

19  interested directly or indirectly in the

20  matter in controversy, nor am I in the

21  employ of any of the counsel.

22     IN WITNESS WHEREOF, I have hereunto

23  set my hand this        30        day of September

24  , 2013.

25  _____

# EXHIBIT BB

Page 1

1

2    UNITED STATES DISTRICT COURT

     SOUTHERN DISTRICT OF NEW YORK

3    ----------------------------------------

4    523 IP LLC, an Illinois Corporation,

5                           Plaintiff,

6              -against-

7    CUREMD.COM, a New York Corporation,

8                           Defendant.

9    Case No. 11 Civ. 9697 (WHP)

     ----------------------------------------

10

11                      March 28, 2013

                        9:36 a.m.

12

13

14

15           DEPOSITION of KAMAL HASHMAT,

16   taken by Plaintiff, pursuant to Notice,

17   held at the offices of DRINKER, BIDDLE &

18   REATH LLP, 1177 Avenue of the Americas,

19   New York, New York before Wayne Hock, a

20   Notary Public of the State of New York.

21

22

23

24

25

Page 65

1                    K. Hashmat

2       Q.      So how would that assignment

3   occur?

4       A.      No.  For example, I'm a doctor.

5   A patient wrote a message, a patient wrote

6   a text for me.  It comes in and there's a

7   certain area that it shows up on.  And

8   then if the -- so anyone can go in and log

9   on and take a look at that.  It's your

10  same functionality as your in box in the

11  office.  If I'm in my office and I want

12  someone to come in and take a look at the

13  left side of my desk where the sticky

14  notes are put in, it's that.  There's no

15  assignment within CureMD.  There's no

16  routing within CureMD.

17      Q.      Obviously people write some

18  pretty personal notes to their doctors.

19              Is it true that anyone within

20  the practice would be able to see those

21  messages by opening up a patient's EMR?

22      A.      It depends on the rights that

23  this person has.  Within CureMD on the

24  base application, you have different

25  rights.  For example, within your practice

Page 76

1

2                    CERTIFICATION BY REPORTER

3

4        I, Wayne Hock, a Notary Public of the

5    State of New York, do hereby certify:

6        That the testimony in the within

7    proceeding was held before me at the

8    aforesaid time and place;

9        That said witness was duly sworn

10   before the commencement of the testimony,

11   and that the testimony was taken

12   stenographically by me, then transcribed

13   under my supervision, and that the within

14   transcript is a true record of the

15   testimony of said witness.

16       I further certify that I am not

17   related to any of the parties to this

18   action by blood or marriage, that I am not

19   interested directly or indirectly in the

20   matter in controversy, nor am I in the

21   employ of any of the counsel.

22       IN WITNESS WHEREOF, I have hereunto

23   set my hand this        2     day of  May

24   , 2013.

25   _____

# EXHIBIT CC

Page 78

1

2    UNITED STATES DISTRICT COURT

     SOUTHERN DISTRICT OF NEW YORK

3    ------------------------------------------------

4    523 IP LLC, an Illinois corporation,

5                         Plaintiff,

6              -against-

7    CUREMD.COM, a New York corporation,

8                         Defendant.

9    Case No. 11 Civ. 9697 (WHP)

     ------------------------------------------------

10

11                       September 11, 2013

                         9:51 a.m.

12

13

14

15           CONTINUED DEPOSITION of KAMAL

16    HASHMAT, taken by Plaintiff, pursuant to

17    Notice, held at the offices of DRINKER,

18    BIDDLE & REATH LLP, 1177 Avenue of the

19    Americas, New York, New York before Wayne

20    Hock, a Notary Public of the State of New

21    York.

22

23

24

25

1                K. Hashmat

2       going to click into the log in page

3       and the log in that I'm going to use

4       is my code at Gmail.com.  The password

5       is CureMD.  I'll click on submit.

6                So we're logged into the patient

7       portal and I'll go into the messaging.

8       This is what I wanted to explain so

9       I'll click in the messages.  These are

10      the message screen.  I'll click on the

11      message site.  These are all the

12      different messages.  I can click on

13      compose.  When I click on compose so

14      you guys can see, this is the message

15      section here.  So there is no --

16      you've got three things off the claim

17      thirty-one that we want to explain.

18      The first thing is the recipient here.

19      So there is no routing built in.  When

20      I click on that, it's going to show me

21      a list of all the different doctors

22      that are listed here and this is a

23      predefined list of the clinicians that

24      the patient can send the message to.

25      So you click on Dr. Rosa and the

1                    K. Hashmat

2       attending physician; I can do okay.

3       That's all.  There's no other

4       information that's there, there's no

5       routing to it, it's just a predefined

6       list, it's just a message board, and

7       the patient wants to write that I am

8       feeling better.  So patient wants to

9       send the message that I'm feeling

10      better and wants a follow-up.  He can

11      also write to the doctor that he needs

12      diet instructions.

13           So as you can see here, there's

14      no downloadable form as it's explained

15      in the section thirty-one so the

16      message is going from here to the

17      doctor and the subject is here and

18      this is the content of the message.

19      And then you click on send.  The

20      message is sent from here and that's

21      all.  That's the functionality.  As I

22      was able to demonstrate you guys,

23      right through the composition of the

24      message here there's no downloadable

25      form here, there's no routing of who

K. Hashmat

1
2      the user is or who the sender is.
3      It's just sticky note functionality
4      that has the ability to send this
5      message to the doctor.
6          Q.    Mr. Hashmat, let me ask you a
7  question.
8              Is there any direction of the
9  message to the physician based on the
10  content of the message?
11     A.    As you can see from the screen,
12  there is no routing of the message,
13  there's no content -- there's no routing
14  entry form here, there's no content of
15  this message anywhere, so it has no
16  ability to actually -- depending upon what
17  the routing is --
18     Q.    The message is sent to a
19  physician based on what?
20     A.    It's just a sticky note message,
21  it's not based on any kind of routing.
22     Q.    It's not based on the content of
23  the message?
24     A.    Right.
25          MR. KELLEHER: Objection.

Page 185

1

2                CERTIFICATION BY REPORTER

3

4       I, Wayne Hock, a Notary Public of the

5   State of New York, do hereby certify:

6       That the testimony in the within

7   proceeding was held before me at the

8   aforesaid time and place;

9       That said witness was duly sworn

10  before the commencement of the testimony,

11  and that the testimony was taken

12  stenographically by me, then transcribed

13  under my supervision, and that the within

14  transcript is a true record of the

15  testimony of said witness.

16      I further certify that I am not

17  related to any of the parties to this

18  action by blood or marriage, that I am not

19  interested directly or indirectly in the

20  matter in controversy, nor am I in the

21  employ of any of the counsel.

22      IN WITNESS WHEREOF, I have hereunto

23  set my hand this      30      day of September

24  , 2013.

25  _____

EXHIBIT DD



# CureMD Patient Portal User Guide for Provider Staff

01012

**CureMD Patient Portal User Guide for Provider Staff**

CUREMD, INC. PROVIDES THIS PUBLICATION "AS IS" WITHOUT WARRANTY OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

In no event shall CureMD be liable for any loss of profits, loss of business, loss of use of data, interruption of business, or for indirect, special, incidental, or consequential damages of any kind, even if CureMD has been advised of the possibility of such damages arising from this publication. CureMD may revise this publication from time to time without notice.

Some stats or jurisdictions do not allow disclaimer of express or implied warranties in certain transactions; therefore, this statement may not apply to you.

Copyright © 2012 CureMD, Inc. All rights reserved.

Any other trademarks and/or product names used in this document may be the trademarks of their respective owners.

01013

# TABLE OF CONTENTS

*Chapter 1: Using this Guide* .................................................................................................. *1*

*Chapter 2: About the CureMD Patient Portal* .............................................................. *3*

Accessing CureMD ......................................................................................................... 3

Overview of CureMD ..................................................................................................... 4

*Chapter 3: CureMD Patient Portal Administration* ...................................................... 7

Patient Portal Settings .................................................................................................... 7

Setting up the CureMD Patient Portal ......................................................................... 8

Enabling the CureMD Patient Portal ........................................................................ 8

Adding a Practice Logo .............................................................................................. 8

Configuring Patient Portal Modules .......................................................................... 9

Configuring the Registration Workflow ................................................................... 10

Customizing the Welcome Note ............................................................................... 12

Customizing the Our Staff Screen ........................................................................... 13

Adding Keep in Touch Information ......................................................................... 15

Configuring Location Information ............................................................................... 16

Configuring Access Rights ........................................................................................... 18

Publishing Legal Policies ............................................................................................. 19

Adding Terms of Service ........................................................................................... 19

Adding a Privacy Policy ............................................................................................ 20

Adding a Patient Portal Agreement ......................................................................... 21

Consent Form section ................................................................................................... 22

Adding a Consent Form ........................................................................................... 23

Modifying a Consent Form ...................................................................................... 24

Creating CureMD Patient Portal Logins .................................................................... 25

Patient Portal Administration ...................................................................................... 27

Managing Registration Requests ................................................................................. 27

Accepting a Registration Request ............................................................................. 28

Rejecting Registration Requests ............................................................................... 29

Accepting a Previously Rejected Registration Request ......................................... 30

Update Requests ........................................................................................................... 30

Accepting an Update Request ................................................................................... 30

Rejecting Update Requests ....................................................................................... 31

Accepting Previously Rejected Update Requests ................................................... 32

Managing Appointment Requests ............................................................................... 33

Accepting an Appointment Request ......................................................................... 33

Rejecting an Appointment Request .......................................................................... 35

Accepting a Previously Rejected Appointment Request ....................................... 36

Sending Messages to Patients ...................................................................................... 36

*Chapter 4: Registering Patients for the CureMD Patient Portal* ........................... 39

Registration Overview ................................................................................................. 39

Accessing the Registration Screen ............................................................................. 39

Demographics ............................................................................................................... 40

Contacts ......................................................................................................................... 40

01014

Insurance......................................................................................................41
Family History.............................................................................................42
Social History..............................................................................................43
Surgery History...........................................................................................44
Medical History..........................................................................................44
Allergy........................................................................................................45
Consent Forms...........................................................................................45
Insurance Consent......................................................................................46
Registration Complete................................................................................47

*Chapter 5: Using the Patient Portal*...................................................**49**

**Accessing the Patient Portal**............................................................**49**

**Home Section**..........................................................................................**49**
Messages......................................................................................................50
Profile...........................................................................................................51
Contacts.......................................................................................................52
Consents......................................................................................................53
Insurance.....................................................................................................53
My Providers................................................................................................54
Change Password.........................................................................................54

**Clinical Section**......................................................................................**55**
Clinical Summary........................................................................................56
Patient Statements......................................................................................56
Health Maintenance Alerts.........................................................................57
Provider Notes.............................................................................................57
Complaints..................................................................................................58
History.........................................................................................................59
Allergies......................................................................................................59
Lab Results..................................................................................................60
Procedure Results.......................................................................................61
Radiology Results........................................................................................61
Diagnosis....................................................................................................62
Medications/Refills.....................................................................................62
Immunizations...........................................................................................63

**Appointment Section**............................................................................**64**
Requesting a New Appointment..................................................................64
Viewing Appointment Requests..................................................................65

01015

# Chapter 1: Using this Guide

The *CureMD Patient Portal User Guide for Provider Staff* describes how a provider's patients and staff can use the CureMD Patient Portal to enter and update patient information, as well as provide clinical information to patients.

- For details about checking in patients, scheduling provider hours, and scanning and maintaining patient documents, see the *CureMD User Guide for Front Desk Staff*.
- For details about billing, refer to the *CureMD User Guide for Billing Staff*.
- For details about creating clinical notes and prescribing medications electronically, refer to the *CureMD EMR User Guide for Clinical Staff*.

# Chapter 2: About the CureMD Patient Portal

A provider's patients and staff can use the CureMD Patient Portal to manage patient information and facilitate communication between the provider and the patient.

A provider's patients can use the Patient Portal to do the following:

- enter information about themselves, such as insurance and contact information, as well as medical history;
- communicate through messages from their providers;
- review clinical information such as health maintenance alerts, provider notes, and lab results; and
- request appointments with their providers.

A provider's staff can use the Patient Portal to do the following:

- accept and reject patient registration requests;
- update patient requests such as changes to demographic and insurance information;
- accept and reject appointment requests; and
- create Patient Portal logins

## Accessing CureMD

To launch CureMD, do the following:

1. Open CureMD in your web browser by using the URL given to you by your Account Manager.

2. Log in to CureMD. On the Login screen, enter the following:

| Username | The username given to you by your CureMD Account Manager. |
| Password | The password given to you by your CureMD Account Manager. You will change this password after you log in to CureMD. |

3. Click **Sign in**. The CureMD License Agreement appears.

4. You must read and accept the terms & conditions of the license agreement. Click **I Accept** to accept the agreement. The Change Password screen appears.

5. Enter the following:

| Current Password | Your current password |
| New Password | Any password of 6 or more characters; the password must be a |

CureMD Patient Portal User Guide for Provider Staff

| | combination of letters and numbers and is case-sensitive. |
|---|---|
| Re-enter New Password | Re-enter your new password. |

6. Click **Submit**. The Password Change Successful screen appears.

7. You will now be redirected to the CureMD Home screen.

## Overview of CureMD

When you launch CureMD, the first screen you see is the Personal module. From the Personal module, you can access the modules for the tasks that you perform, such as scheduling appointments, posting payments, or prescribing medications.



**Figure 1: CureMD**

Figure 1 shows the information and links that are available in each CureMD module, as described below. The modules that you see depend on your access level.

01018

## A – Module Links

Each CureMD screen has links to the CureMD modules. When you click on one of these links, the selected module appears, presenting more choices. For example, the front desk staff uses the Patient module to register patients and the Scheduler module to schedule appointments. The medical staff uses the Patient module to create clinical notes and manage prescriptions. The billing staff uses the Billing and Claims modules to view appointments and eSuperbills, create charges, and post payments.

## B – User Greeting

The user greeting displays the user's name, as well as the date and time.

## C – Quick Links

Quick Links are shortcuts to CureMD features, as well as information that requires your attention. The Quick Links section tells you about unread messages, pending tasks, appointments requests, and other information. Quick Links can be customized to suit your needs.

## D – Practice/Location Section

The Practice/Location section shows the name of the practice and the location of the user.

## E – Navigation Menu

The navigation menu provides access to the tasks that are available in each CureMD module. For example, if you are the office receptionist checking in patients, you can use the navigation menu to access the registration and appointment screens. If you are a provider seeing a patient, you can navigate quickly the clinical notes for the patient. If you are entering copayment information, you can quickly access the Payment screens. The name of the current module (such as "Personal" in Figure 1) appears at the top of the navigation menu.

## F – Main Section

The main section displays the screen for your current task, such as the Dashboard, Patient Demographics, or Scheduler. The name of the screen (such as "Dashboard" in Figure 1) is displayed on the tab.

# EXHIBIT EE

Page 1

1

2    UNITED STATES DISTRICT COURT

     SOUTHERN DISTRICT OF NEW YORK

3    _____

4    523 IP LLC, an Illinois Corporation,

5                         Plaintiff,

6              -against-

7    CUREMD.COM, a New York Corporation,

8                         Defendant.

9    Case No. 11 Civ. 9697 (WHP)

     _____

10

11                       March 28, 2013

                         9:36 a.m.

12

13

14

15          DEPOSITION of KAMAL HASHMAT,

16   taken by Plaintiff, pursuant to Notice,

17   held at the offices of DRINKER, BIDDLE &

18   REATH LLP, 1177 Avenue of the Americas,

19   New York, New York before Wayne Hock, a

20   Notary Public of the State of New York.

21

22

23

24

25

Page 65

```
 1                    K. Hashmat
 2      Q.     So how would that assignment
 3  occur?
 4      A.     No.  For example, I'm a doctor.
 5  A patient wrote a message, a patient wrote
 6  a text for me.  It comes in and there's a
 7  certain area that it shows up on.  And
 8  then if the -- so anyone can go in and log
 9  on and take a look at that.  It's your
10  same functionality as your in box in the
11  office.  If I'm in my office and I want
12  someone to come in and take a look at the
13  left side of my desk where the sticky
14  notes are put in, it's that.  There's no
15  assignment within CureMD.  There's no
16  routing within CureMD.
17      Q.     Obviously people write some
18  pretty personal notes to their doctors.
19             Is it true that anyone within
20  the practice would be able to see those
21  messages by opening up a patient's EMR?
22      A.     It depends on the rights that
23  this person has.  Within CureMD on the
24  base application, you have different
25  rights.  For example, within your practice
```

1                    K. Hashmat

2     you have two hundred patients.  Ten of

3     them are HIV positive.  So there are HIPAA

4     rules -- within that there is HIPAA rule

5     PHI which is protect health information.

6     So the HIV patient within your practice,

7     not everyone can go in and look at the

8     medical record.  So there are different

9     rule-based things for person people's eyes

10    only.

11        Q.    If a patient posted a note that

12    concerned say a billing inquiry of some

13    kind, a problem they're having with the

14    insurance company, would that be treated

15    exactly the same as any other note?

16        A.    Yes.

17        Q.    Does that mean that the doctors

18    who use your product actually spend time

19    reading notes about nothing but billing

20    inquiries?

21        A.    The patient portal functionality

22    is only for -- we label it as just

23    clinical message which means that it's

24    related to anything that's medical-based.

25    So if they have any billing question, they

Page 76

1

2                    CERTIFICATION BY REPORTER

3

4        I, Wayne Hock, a Notary Public of the

5   State of New York, do hereby certify:

6        That the testimony in the within

7   proceeding was held before me at the

8   aforesaid time and place;

9        That said witness was duly sworn

10  before the commencement of the testimony,

11  and that the testimony was taken

12  stenographically by me, then transcribed

13  under my supervision, and that the within

14  transcript is a true record of the

15  testimony of said witness.

16       I further certify that I am not

17  related to any of the parties to this

18  action by blood or marriage, that I am not

19  interested directly or indirectly in the

20  matter in controversy, nor am I in the

21  employ of any of the counsel.

22       IN WITNESS WHEREOF, I have hereunto

23  set my hand this      2     day of *May*

24  , 2013.

25       _____

# EXHIBIT FF

Page 78

1

2    UNITED STATES DISTRICT COURT

     SOUTHERN DISTRICT OF NEW YORK

3    ------------------------------------------------

4    523 IP LLC, an Illinois corporation,

5                         Plaintiff,

6            -against-

7    CUREMD.COM, a New York corporation,

8                         Defendant.

9    Case No. 11 Civ. 9697 (WHP)

     ------------------------------------------------

10

11                      September 11, 2013

                        9:51 a.m.

12

13

14

15           CONTINUED DEPOSITION of KAMAL

16    HASHMAT, taken by Plaintiff, pursuant to

17    Notice, held at the offices of DRINKER,

18    BIDDLE & REATH LLP, 1177 Avenue of the

19    Americas, New York, New York before Wayne

20    Hock, a Notary Public of the State of New

21    York.

22

23

24

25

1                    K. Hashmat

2          THE WITNESS: So I'm logging into

3     our All-in-One product.  So the first

4     screen actually describes the log-in

5     screen.  The All-in-One product is

6     welcoming the doctor, and this is

7     called your dashboard screen.  So what

8     you're going to do on top is I'm going

9     to click on settings.

10         MR. ADAMS: Slow down and speak

11    up so he can transcribe this stuff.

12         THE WITNESS: When you log in,

13    this is the main screen of the CureMD

14    product line, so I've just logged in.

15    This is the main screen that we are

16    seeing.  It's called the doctor's

17    dashboard.  From there I'm actually

18    going to click on the settings section

19    here.  Under that we have the practice

20    section and this is where you have my

21    practice setup and we have the patient

22    portal here.  This is the Web address

23    for the patient portal.  I'm going to

24    copy the Web address.  This is the

25    patient portal log in screen.  I'm

1                    K. Hashmat

2      going to click into the log in page

3      and the log in that I'm going to use

4      is my code at Gmail.com.  The password

5      is CureMD.  I'll click on submit.

6              So we're logged into the patient

7      portal and I'll go into the messaging.

8      This is what I wanted to explain so

9      I'll click in the messages.  These are

10     the message screen.  I'll click on the

11     message site.  These are all the

12     different messages.  I can click on

13     compose.  When I click on compose so

14     you guys can see, this is the message

15     section here.  So there is no --

16     you've got three things off the claim

17     thirty-one that we want to explain.

18     The first thing is the recipient here.

19     So there is no routing built in.  When

20     I click on that, it's going to show me

21     a list of all the different doctors

22     that are listed here and this is a

23     predefined list of the clinicians that

24     the patient can send the message to.

25     So you click on Dr. Rosa and the

Page 172

                    K. Hashmat

1

2     attending physician; I can do okay.

3     That's all.  There's no other

4     information that's there, there's no

5     routing to it, it's just a predefined

6     list, it's just a message board, and

7     the patient wants to write that I am

8     feeling better.  So patient wants to

9     send the message that I'm feeling

10    better and wants a follow-up.  He can

11    also write to the doctor that he needs

12    diet instructions.

13          So as you can see here, there's

14    no downloadable form as it's explained

15    in the section thirty-one so the

16    message is going from here to the

17    doctor and the subject is here and

18    this is the content of the message.

19    And then you click on send.  The

20    message is sent from here and that's

21    all.  That's the functionality.  As I

22    was able to demonstrate you guys,

23    right through the composition of the

24    message here there's no downloadable

25    form here, there's no routing of who

Page 173

K. Hashmat

1

2      the user is or who the sender is.

3      It's just sticky note functionality

4      that has the ability to send this

5      message to the doctor.

6          Q.    Mr. Hashmat, let me ask you a

7   question.

8              Is there any direction of the

9   message to the physician based on the

10  content of the message?

11         A.    As you can see from the screen,

12  there is no routing of the message,

13  there's no content -- there's no routing

14  entry form here, there's no content of

15  this message anywhere, so it has no

16  ability to actually -- depending upon what

17  the routing is --

18         Q.    The message is sent to a

19  physician based on what?

20         A.    It's just a sticky note message,

21  it's not based on any kind of routing.

22         Q.    It's not based on the content of

23  the message?

24         A.    Right.

25             MR. KELLEHER: Objection.

Page 185

1

2                    CERTIFICATION BY REPORTER

3

4        I, Wayne Hock, a Notary Public of the

5   State of New York, do hereby certify:

6        That the testimony in the within

7   proceeding was held before me at the

8   aforesaid time and place;

9        That said witness was duly sworn

10   before the commencement of the testimony,

11   and that the testimony was taken

12   stenographically by me, then transcribed

13   under my supervision, and that the within

14   transcript is a true record of the

15   testimony of said witness.

16        I further certify that I am not

17   related to any of the parties to this

18   action by blood or marriage, that I am not

19   interested directly or indirectly in the

20   matter in controversy, nor am I in the

21   employ of any of the counsel.

22        IN WITNESS WHEREOF, I have hereunto

23   set my hand this        30       day of September

24   , 2013.

25        _____

EXHIBIT GG

Page 78

1

2   UNITED STATES DISTRICT COURT

    SOUTHERN DISTRICT OF NEW YORK

3   _____

4   523 IP LLC, an Illinois corporation,

5                          Plaintiff,

6              -against-

7   CUREMD.COM, a New York corporation,

8                          Defendant.

9   Case No. 11 Civ. 9697 (WHP)

    _____

10

11                          September 11, 2013

                            9:51 a.m.

12

13

14

15          CONTINUED DEPOSITION of KAMAL

16   HASHMAT, taken by Plaintiff, pursuant to

17   Notice, held at the offices of DRINKER,

18   BIDDLE & REATH LLP, 1177 Avenue of the

19   Americas, New York, New York before Wayne

20   Hock, a Notary Public of the State of New

21   York.

22

23

24

25

1              K. Hashmat

2    determine an information content of the

3    message received from the patient and then

4    select a message destination of the

5    plurality of message destination by

6    matching the routing criteria of the

7    selected destination with the determined

8    information content.

9        Q.     With your understanding of the

10   patient portal product in 2000 and its

11   current version, does the patient portal

12   product have that element?

13       A.     It does not have that element.

14       Q.     Can you explain why it does not

15   have that element?

16       A.     Because it doesn't have any of

17   the routing functionality built in.  It

18   cannot actually receive the message,

19   review what the content is about, and then

20   route the message to the selected doctors

21   or the nurses as in different figures it's

22   been explained in the patent.

23       Q.     What is your understanding of a

24   content processor?

25       A.     My understanding of a content

1                    K. Hashmat

2    process or is you go in there and you lay

3    down specific rules so the doctor will say

4    okay, based on these specific guidelines I

5    want the message to be routed to the

6    nurse, to the doctor, to all these people.

7    So within CureMD patient portal, it's a

8    sticky note functionality, it doesn't have

9    any of those abilities which is part of

10   the core CureMD patient portal.

11        Q.    In your earlier testimony, you

12   used an analogy of a sticky note.

13              What did you mean by that?

14        A.    I mean for a proper message you

15   need a sender and a receiver plus the

16   content.  And within the CureMD sticky

17   note functionality, which I want to

18   demonstrate through the patient portal

19   demonstration this afternoon, it doesn't

20   have any of that functionality which is

21   built in.  There's no sender or receiver.

22   You go in there and there's a list of

23   providers that are there in the -- that

24   you can send a message to or a sticky note

25   to.  And then when it goes into the

Page 165

1                    K. Hashmat

2    doctor's CureMD system, the doctor doesn't

3    have the ability to actually -- it doesn't

4    like auto alert the doctor that hey,

5    you've got a new message.  So the doctors

6    have to go and look for that message or

7    messages that are coming in.

8         Q.    That's your understanding of the

9    patient portal system?

10        A.    Yes, sir.

11        Q.    And again, how does that compare

12   to a content processor?

13        A.    It doesn't have a content

14   processor.

15        Q.    How do you know what a content

16   processor is?  What do you base your

17   knowledge on?

18        A.    I have a bachelor's in physics,

19   a master's in computer science, and I

20   spent twenty-plus years in healthcare IT,

21   so I have some good basis to understand

22   what a content processor is.

23        Q.    Have you ever considered

24   implementing a content processor in the

25   patient portal product?

Page 185

1

2                    CERTIFICATION BY REPORTER

3

4        I, Wayne Hock, a Notary Public of the

5   State of New York, do hereby certify:

6        That the testimony in the within

7   proceeding was held before me at the

8   aforesaid time and place;

9        That said witness was duly sworn

10  before the commencement of the testimony,

11  and that the testimony was taken

12  stenographically by me, then transcribed

13  under my supervision, and that the within

14  transcript is a true record of the

15  testimony of said witness.

16       I further certify that I am not

17  related to any of the parties to this

18  action by blood or marriage, that I am not

19  interested directly or indirectly in the

20  matter in controversy, nor am I in the

21  employ of any of the counsel.

22       IN WITNESS WHEREOF, I have hereunto

23  set my hand this       30      day of September

24  , 2013.

25  _____

# EXHIBIT HH

Page 1

1

2   UNITED STATES DISTRICT COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   ------------------------------)

5   523 IP LLC, an Illinois

6   corporation,

7                Plaintiff,          Case No.

8          vs.               11 Civ. 9697 (WHP)

9   CureMD.com, a New York

10   corporation,

11                Defendant.

12   ------------------------------)

13

14

15

16          DEPOSITION OF JOSEPH SAMEH

17             New York, New York

18            September 12, 2013

19

20

21

22

23

24   Reported by:

     Linda Salzman

25   JOB NO. 1731950

Page 168

                    J. Sameh

1
2       Q.    And this claim chart does not

3  include a cover letter attached to it?

4       A.    That is correct.

5       Q.    I assume a decision was made not to

6  serve it on Office Ally?

7       A.    That is correct.

8       Q.    Is it fair to say any action

9  against Office Ally is in abeyance?

10      A.    Yes.

11      Q.    Has a decision been made not to

12  pursue Office Ally?

13      A.    I believe in all of these a

14  threshold was not met to my satisfaction.

15      Q.    I don't believe I asked you that

16  question with regard to Micro-Office Systems.

17           Exhibit Number 72, claim chart, has

18  a decision been made there not to accuse them

19  of infringement?

20      A.    Based on the information currently

21  at hand, yes.  And the same for all of them.

22      Q.    Does that same apply to

23  HealthComSys?

24      A.    I would say it would apply to all

25  of these that fit into that category.

Page 169

1                   J. Sameh

2        Q.    Okay.   The claim chart for Office

3   Ally had been marked as Exhibit 73.

4              (Defendant's Exhibit 73, Claim

5        chart for Office Ally, marked for

6        identification, as of this date.)

7        Q.    And finally, I present to you the

8   claim chart identifying Omedix.

9              Are you familiar with Omedix,

10  Mr. Sameh?

11       A.    Yes.

12       Q.    Did you prepare this claim chart?

13       A.    I did.

14       Q.    The claim chart does not include a

15  letter?

16       A.    Correct.

17       Q.    Therefore, is it fair to say a

18  decision was made not to accuse Omedix of

19  infringement?

20       A.    That is correct.

21       Q.    Are there any plans in the near

22  future to give them notice of infringement?

23       A.    Based on the information that we

24  had at the time, we did not have strong

25  enough evidence to move on.

Page 170

```
 1                    J. Sameh
 2        Q.    Does that evidence go to the weight
 3   of infringement?
 4        A.    That is correct.
 5        Q.    This is marked Exhibit 74.
 6              (Defendant's Exhibit 74, Claim
 7         chart for Omedix, marked for
 8         identification, as of this date.)
 9        Q.    Mr. Sameh, I hand to you a string
10   of e-mails which we will identify
11   collectively as Exhibit Number 75, between
12   your counsel, Mr. Dort, and Dudley McClellan,
13   in-house counsel for e-MDs.  This is Exhibit
14   Number 75, and it includes multiple copies of
15   two items of correspondence; a September 26,
16   2011 letter to Mr. Dort from Mr. McClellan
17   and an earlier e-mail from Mr. Dort dated
18   September 9, 2011.
19              They're repeated throughout this
20   sequence.  The first communication is from
21   Mr. Dort, September 9, 2011.  If you could
22   find that in the string, sir.  He said he's
23   following up on a telephone conference on
24   September 7th.
25              "I have discussed with my client
```

Page 171

```
 1              J. Sameh
 2   general licensing points as raised by you and
 3   can outline some basic terms for your
 4   consideration."
 5              Can you tell me anything about this
 6   party, e-MDs, Mr. Sameh?
 7       A.   I don't recall the specifics.  I
 8   would have to read this and refresh my
 9   memory.
10       Q.   You don't recall having a
11   discussion with Mr. Dort about licensing
12   e-MDs as he states in the first paragraph?
13       A.   I recall e-MDs, but I don't recall
14   the specific conversations.
15       Q.   At the end of this e-mail from
16   Mr. Dort to Mr. Dudley he outlines the basic
17   terms of a license.
18              Do you see that, Mr. Sameh?
19       A.   I do.
20       Q.   This is, I think, the first letter
21   we've seen that really sets forth the basic
22   license terms.
23              Was this an original or is this
24   consistent with your past licensing offers?
25       A.   It's similar.
```

Page 172

1                    J. Sameh

2        Q.    Possibly it was produced in the

3    correspondence and other documents you

4    provided but I did not see a letter accusing

5    e-MDs of infringement, but it assumes there

6    was because there's this offer of a license.

7             Do you remember whether e-MDs was

8    accused of infringement?

9        A.    I do not recall, I'm sorry to say.

10       Q.    Mr. McLellan, then in his e-mail of

11   September 26, 2011, goes through an analysis

12   element by element of Claim 31.

13            Do you remember seeing this e-mail,

14   Mr. Sameh?

15       A.    I believe so.  I believe I saw it.

16       Q.    And he takes a position on each

17   element?

18       A.    Of course he does.

19       Q.    And why those elements are not

20   present in his device.

21            Do you have a position on his

22   assertions of noninfringement?

23            For example:

24            "Element 1.  Messages are not

25   routed anywhere in patient portal."

Page 181

1

2               C E R T I F I C A T E

3     STATE OF NEW YORK      )

4                            : ss.

5     COUNTY OF NEW YORK     )

6

7             I, Linda Salzman, a Notary Public

8       within and for the State of New York,

9       do hereby certify:

10            That JOSEPH SAMEH, the witness

11      whose deposition is hereinbefore set

12      forth, was duly affirmed by me and that

13      such deposition is a true record of the

14      testimony given by the witness.

15            I further certify that I am not

16      related to any of the parties to this

17      action by blood or marriage, and that I

18      am in no way interested in the outcome

19      of this matter.

20            IN WITNESS WHEREOF, I have

21      hereunto set my hand this 20th day of

22      September, 2013.

23

24                    _____
                          *Linda Salzman*

25                       Linda Salzman